**MEASE et ux.**

v.

**SHREVEPORT RYS. CO.**

**Civ. A. No. 3356.**

United States District Court
W. D. Louisiana,
Shreveport Division.

Dec. 7, 1953.

Harry A. Johnson, Jr., Lunn, Irion, Switzer, Trichel & Johnson, Shreveport, La., Curtis E. Hill, Dallas, Tex., for plaintiff.

Sam A. Freyer, Freyer & Freyer, Shreveport, La., for defendant.

DAWKINS, District Judge.

This is an action in damages for personal injuries to the plaintiff wife and to the automobile of the plaintiff husband alleged to have been caused by a collision between the right front end of an automobile with the left rear end of a trolley bus on Texas Street in the City of Shreveport, the automobile being driven by the plaintiff husband. The ground of negligence was the sudden stopping of the bus by defendant's driver without warning or signal.

The defense is a denial of negligence and a plea of contributory negligence on the part of the plaintiff husband.

The case was tried by the Judge without a jury and the matter turns upon an issue of fact as to whether the bus driver was guilty of acts of commission or omission which caused the accident. The following is a summary of the evidence upon the point:

On behalf of the plaintiffs, Mr. Mease, the husband, testified he was driving behind the trolley about 30 feet and that both he and the bus were making around 25 to 30 miles per hour; that the latter

came to a sudden stop at Wilson Street "* * * he just pulled toward the curb as he stopped", and was about eight to ten feet out from the curb. He, the witness, does not know how far the front end of the bus was from the curb but "there was room for cars to go between the curb and the bus".

As to whether any signals were given, Mease said "I did not see any * * * whatever". Later, when asked if he saw "any lights on the back of the bus", he answered, "No sir, no lights came on."

In the car with Mease at the time were his wife, his wife's mother and the wife's brother, Calvin Reed. None of these testified, plaintiff husband saying that he had been "unable to find" Reed and Mrs. Mease was asleep in the back of the car according to her husband at the time of the collision. The wife is a co-plaintiff for a large sum but Mease testified "when I asked her if she was hurt, and she said, no, she didn't think so".

On cross-examination he testified that he saw cars go between the bus and the curb after his wife had been taken away to the hospital and the right front end of his bumper was hung on the left rear end of the trolley and had to be disconnected.

Plaintiff offered no other witness or evidence in chief as to how the accident happened. A police officer came to the scene, but got there after the trolley had left and all he could say was that he found "glass of a mirror which had fallen off the car which was right in front of the car, in front of it on the ground." He made no extended investigation because he had other work to do.

Defendant called some eight witnesses, the first being one Clifford Broussette, who was a passenger on the bus and all he could remember was "hearing a noise and a sudden jolt." He could not be sure, "but the best I can remember, the trolley was moving. I do not know." Otherwise, he could not remember anything of value. Just before leaving the stand he was asked on re-direct by counsel for defendant: "Did you feel any sudden jerk in the stopping movement of the trolley before you heard the crash, if it was a crash, into the rear end of the trolley? A. The best I can remember, I do not think so."

Mrs. T. K. Walker, called by defendant, was an employee of the telephone company and said, "We were across the street from where the accident happened" and did not see the impact but heard it. She was looking at used cars with her husband. The vehicles were stopped when she turned around to look. In response to question as to whether or not the trolley was illuminated, her answer was "Yes, but I can't say—I do know the back lights were on." The "rear end of the trolley was out several feet from the curb. The front of it was closer. He was not actually to the trolley stop yet, but it looked like he was just pulling into the trolley stop." As to cars passing between the bus and the curb, which the plaintiff testified he had seen, she did not know whether this was true or not. "There were some cars parked back there but I did not see any attempt to go through. It seemed to me, after looking at it, that they could not have gone any closer to the trolley and stopped because the cars were parked there where they were." * * * it looked like he was just beginning to pull into the trolley stop and the car was parked right next to the trolley stop where he could not pull all the way in. He was not actually too close to the trolley stop, of course."

On cross-examination "there was a car between the rear of the trolley and the curb. It was parked there." There was room to walk between the parked car and the rear end of the trolley. "The car was parked almost within the trolley stop. The back lights of the trolley were on and I believe there were three or four lights on the back of the trolley." The lights "were on the top and on the middle of the rear end, I believe. I am not sure just where they were located."

"Q. Could you see how far he was back from Wilson's Alley when he stopped? A. No sir, it wasn't too far. They usually pulled right up to

the corner, but he was not quite up there. He was a few feet away from it."

On further cross-examination, this witness, when asked about the lights on the back of the trolley, said: "I believe there were three or four lights on the back of the trolley. There is a round light back there, but I don't remember whether it is red or green." When pressed as to what color it was, she answered, "I don't know, I believe it was red."

The witness F. J. Moreau was a passenger on the bus and was asked to describe the movements of the trolley bus as it proceeded down the street before the accident occurred. He replied: "The best I can remember the trolley was slowing down coming to a stop and pulled over to the right, when something happened at the rear, but I did not see it happen * * * I felt the impact of a heavy something, something hit the trolley from the rear * * *." As to speed, "I don't believe it was going fast nor was it going too slow."

"Q. Had it yet come to a stop? A. No sir, it was still moving when the automobile hit it."

He felt no "jolt" and "I think it (the trolley) stopped just as soon as it could." The right front door of the trolley was "approximately five or six feet from the curb." Prior to the time the brakes were applied he did not feel a jolt from the rear and could not recollect whether the brakes were applied. He reiterated this on cross-examination and said that "it was the ordinary stop they made", referring to the trolley. The front end of the trolley was "about ten feet from Wilson Alley." He did not think there was room for a car to pass between the bus and the curb.

Charles Jackson, a colored man, was sitting in the last seat in the rear on the left side of the trolley. "I felt the impact from the back of the trolley. It was just slowing down" when he "felt the brakes coming on * * * it was just like it was going to stop. The front

of the trolley was about five feet from the curb and the rear about eight feet."

L. R. Hines was also on the trolley, about mid-way, got up and started toward the front end to tell the driver he "wanted to get off at the next stop * * * but just about that time the automobile hit the street car." He did not feel any jolt or jar prior to the impact. As to the speed of the trolley, "it was coming to a normal stop when the impact took place"; and then somewhat inconsistently, "it had already stopped at the corner when the automobile, or car hit the trolley. It was already stopped." He did not notice any lights on the rear. On cross-examination he reiterated that the bus had stopped when the car hit it.

J. P. Martin was Superintendent of Equipment for the defendant railway company. He testified that the trolleys are inspected daily and records kept. If the bus has been in an accident it is brought in and inspected. If any parts are broken they are replaced and charged to that trolley. There were no such charges to this bus, 421, on the day of the accident. They did repair the left rear end which was struck by the automobile. It was equipped with air and electric brakes for making sudden stops. The record does not show any repairs to the lights. It takes very little, or about three pounds pressure on the brakes to make the stop lights come on. He described at length the caution lights and the stop lights which come on if the brakes are applied. There were also signs made of metal which are made visible by the lights of an automobile following the trolley.

Oscar Alexander was a claims investigator and identified a picture of the bus involved made some two years later, showing signs on the back. He identified a piece of glass with the word "stop" on it and said it was on the trolley at the time of the accident. Some of those lights were amber and were four feet and one-half inch from the street pavement. They were located 11 inches from the outside on either side of the rear end of the trolley. The "Caution Air Brakes"

sign was about 31 inches from the ground and in the center of the bus on the rear end. This last sign is illuminated when the lights of a following automobile are thrown on it.

Joseph M. Avery was the driver of the bus when the accident happened. At the time he stated that his foot was on the brakes and the trolley was coasting slowly. He felt a jolt and then stopped but he did not get completely to the point of ordinary stopping and came to a halt about half a bus length from Wilson Street. He stepped off the distance from the front end of the trolley from the curb and it was one and one-half steps. At the rear end it was two good steps. The trolley was in motion when the car hit it. It was dark but there was no rain. There was no traffic jam and there was not room for a car to pass between the bus and the curb.

It thus appears that the plaintiffs have not only failed to discharge the burden of proof resting upon them by showing negligence on the part of the defendant, but a fair evaluation of all the evidence shows that it preponderates the other way. Plaintiffs cite and quote at length provisions of statutes and decisions dealing with ordinary automobiles and trucks. In this case, however, we are dealing with a trolley bus having fixed and well-marked stopping points, well known to the traffic generally which may be following, and which travels within a limited space in the streets under power furnished by overhead wires. Instead of the hand signals so strongly stressed by plaintiff, to show slowing down or intention to stop, the proof establishes there were ample signs and signals for such movements on the rear end of the bus which come on when the brakes are applied. These can more readily be seen and are more completely before the eyes of a following vehicle than would be the hand of the bus driver up at the front end of the bus which is 36 feet long, especially when other vehicles are passing and have a tendency to cut off the view of one behind the bus thus interfering with the ability of the said vehicle to see any such hand signals.

It is believed that the evidence preponderates substantially in support of the contention that those rear lights or signals were working and that Mr. Mease was not keeping a proper lookout when he ran into the rear of the bus. Either this or he was traveling at a rate of speed which made it impossible for him to avoid hitting the bus when it slowed down and started towards the stopping point. In order to find for the plaintiffs in this case it would be necessary to disregard the testimony of a large number of witnesses, some of them in no way connected with defendant company, but passengers on the bus, in favor of the single statement of Mease that the signal lights did not come on and that the bus stopped so suddenly he could not avoid hitting it. It would seem that persons travelling in the bus, as some of these were, and especially those getting up to get off, would have been more likely to note any such sudden stopping of the bus than anyone else. All of them tend to confirm the idea that the bus started slowing down as it turned in towards the regular stop for passengers and that it was struck by the car of plaintiffs while still moving. It is true that one witness makes conflicting statements about this, first saying that the collision took place while the bus was moving and slowing down, and in another instance that it was struck after it had stopped. This, however, does not serve to affect the testimony of other disinterested witnesses on point.

The conclusion is that the plaintiffs have utterly failed to prove negligence on the part of defendant and that their demands should be rejected.